UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GARY A. GOLDMAN, | ) |
|     Plaintiff, | ) |
| v. | ) No. 2:24 CV 262 |
| RICKY L. GOLDMAN, RALPH C. GOLDMAN, TRACY A. COLEMAN, ESQ., SAKET SINHA, M.D. d/b/a HOUSE-CALL DOCTORS, LLC; JENNIFER IRONS-JOSTE, ESQ.; MATT COOPER; CHANTE LOWE; STATE OF INDIANA ADULT PROTECTIVE SERVICES, INC.; and JAMES H. CALDWELL; | ) |
|     Defendants. | ) |

### OPINION and ORDER

Plaintiff Gary A. Goldman, *pro se*, alleges that he was the victim of a conspiracy involving his brothers, his uncle, two attorneys, two state investigators, a state agency, and a physician to deprive him of his guardianship rights and inheritance from his mother, Helen Goldman, who is now deceased. This matter is before the court on defendants' motions dismiss (DE ## 26, 28, 33, 35, 37, 39), along with other miscellaneous motions pending in this case (DE ## 54, 63, 64, 70, 74, 80, 82). As explained below, the motions to dismiss are granted, but plaintiff will be permitted an opportunity to amend his complaint with respect to one claim.

I.   BACKGROUND[1]

The history of plaintiff's claims begins with his mother and brothers. According to plaintiff, his elderly mother, Helen, suffered from Alzheimer's disease and dementia in the later years of her life. (DE # 3 at 4.) He further alleges that, despite her mental impairment, his brothers, Ricky and Ralph Goldman, persuaded their mother to sign documents in 2015 and 2016 which would allow her assets to pass to Ricky and Ralph upon her death, rather than to plaintiff. (*Id.* at 4.) For reasons that are not completely clear, Ricky once filed for an order of protection against plaintiff; plaintiff claims the application was based on lies. (*Id.* at 6.)

At some point in 2019, guardianship proceedings were initiated with respect to Helen. Plaintiff alleges that during this time a conspiracy developed to deprive him of his guardianship rights and access to his mother. The conspirators included James Caldwell (plaintiff's uncle), Ralph, Ricky, and Tracy Coleman (Ricky's attorney). According to plaintiff, Helen's physician, Dr. Saket Sinha, was also part of the scheme. It is not clear exactly how or why, but Indiana Adult Protective Services ("IAPS") became involved in Helen's life around this time as well. According to plaintiff, Chante Lowe and Matt Cooper, investigators with IAPS, participated in the conspiracy. During

---

[1] Plaintiff's filings, though voluminous, do not contain a complete or chronological explanation of the events that he claims led to this lawsuit. The facts recited herein are the result of the court's attempt to distill down hundreds of pages filed by plaintiff into a coherent narrative, but many factual holes and inconsistencies remain. Where possible, the court has attempted to give plaintiff, who is proceeding in this case without representation, the benefit of the doubt.

guardianship proceedings, plaintiff was appointed an attorney, Jennifer Irons-Joste, but plaintiff claims she too ultimately joined the plot.

From what the court can discern from plaintiff's filings, Ricky, Ralph, Caldwell, Dr. Sinha, Lowe, Cooper, and Irons-Joste coordinated to create false medical records and social services investigations reports that would harm plaintiff in the course of the 2019 guardianship proceedings. Plaintiff claims that defendants concocted these fraudulent documents via communications amongst themselves; for example, he points to a June 14, 2019, fax from Lowe to Dr. Sinha as an example of the scheme in action. (*Id.* at 12.) Plaintiff alleges that Irons-Joste emailed him the fraudulent reports on July 26, 2019, exposing the scheme. (*Id.* at 9.)

Though it is not completely clear what the results of the guardianship proceedings were, plaintiff appears unsatisfied with the outcome. Plaintiff claims that in November of 2020, Lowe made unspecified statements in an unnamed proceeding that caused plaintiff harm. In 2024, Helen died. (*Id.* at 21.) Plaintiff claims he should have received hundreds of thousands of dollars upon her death, but did not.

On July 29, 2024, plaintiff filed his initial complaint in this case. (DE # 1.) He filed an amended complaint on August 19, 2024. (DE # 3.) In his complaint, plaintiff named the aforementioned alleged members of the conspiracy as defendants. He asserted federal claims in the form of three claims under 42 U.S.C. § 1983, wire fraud, and civil racketeering under 18 U.S.C. § 1964 ("RICO"), as well as defamation *per se*, fraud, breach of fiduciary duty, and intentional infliction of emotional distress claims under

3

Indiana state law. (*Id.*) Defendants filed motions to dismiss. (DE ## 26, 28, 33, 35, 37, 39.) Various other motions were filed related to the briefing process, which are addressed herein. (DE ## 54, 63, 64, 70, 74, 80, 82). Plaintiff has explicitly abandoned his wire fraud claim (DE # 66 at 10), leaving nine other claims for analysis.

## II.   LEGAL STANDARD

Defendants' motions to dismiss implicate three related Federal Rules of Civil Procedure: Rule 12(b)(6), Rule 8, and Rule 9(b). Rule 12(b)(6) requires the dismissal of allegations that fail to state a claim upon which relief can be granted. A court reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

Whether allegations state a claim is a question typically governed by the liberal notice-pleading requirements of Rule 8, which requires that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is the standard that applies to the majority of plaintiff's claims.

However, claims sounding in fraud – such as plaintiff's common law fraud and RICO claims – are subject to the heightened pleading standard found in Federal Rule of Civil Procedure 9(b), which requires the complaint to "state with particularity the circumstances constituting fraud." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495–96 (7th

4

Cir. 2025) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). These heightened pleading requirements apply to complaints alleging fraud to discourage a "sue first, ask questions later" philosophy. *Id.* Such requirements also force a plaintiff to do more than the usual investigation before filing a complaint. *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024).

Rule 9(b) requires a plaintiff to provide "precision and some measure of substantiation" to each fraud allegation. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). As a practical matter, Rule 9(b) requires plaintiffs to identify "the who, what, when, where, and how" of the alleged fraud. *Id.* Procedurally, if a plaintiff has failed to plead fraud, the court must "disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 945 (7th Cir. 2024).

### III.    DISCUSSION

All but two of plaintiffs' claims are untimely, as explained in part A, below. The two remaining claims, civil RICO and common law fraud, benefit from longer limitations periods, so they escape the timeliness pitfall. Ultimately, however, they fail for other reasons that will be set forth in parts B and C. In part D, the court grants plaintiff a limited opportunity to amend his complaint, while part E addresses miscellaneous remaining matters.

5

### A. Plaintiff's Untimely Claims

As the court stated previously, most of plaintiff's claims fail because they were not filed within the relevant limitations period. Specifically, plaintiff's claims alleging defamation, legal malpractice, breach of fiduciary duty, intentional infliction of emotional distress, and violations of Section 1983 are time-barred. The limitations period for these causes of action is two years. *Hall v. Shaw,* 147 N.E.3d 394, 401 (Ind. Ct. App. 2020) (defamation claim subject to two-year statute of limitations); *Myers v. Maxson,* 51 N.E.3d 1267, 1276 (Ind. Ct. App. 2016) (statute of limitations for a claim of legal malpractice is two years); *City of E. Chicago, Ind. v. E. Chicago Second Century, Inc.,* 908 N.E.2d 611, 618 (Ind. 2009) (statute of limitations period for breach of fiduciary duty is two years); *Johnson v. Blackwell,* 885 N.E.2d 25, 30 (Ind. Ct. App. 2008) (two-year statute of limitations applies to intentional infliction of emotional distress claims); *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012) (Section 1983 claims borrow the statute of limitations for state personal injury claims, which in Indiana is two years).

To determine whether each of plaintiff's claims is untimely, the court must determine when each claim accrued. In this case, all of plaintiff's causes of action accrued when the plaintiff knew or should have known of his injury. *See Hall,* 147 N.E.3d at 401 (defamation claim accrues when plaintiff could have reasonably ascertained damage resulting from the alleged defamation); *Myers,* 51 N.E.3d at 1276 (for a legal malpractice claim to accrue in Indiana, "it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage

6

has occurred"); *City of E. Chicago*, 908 N.E.2d at 618 (statute of limitations on breach of fiduciary duty claim begins to run when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of the tortious act of another); *Johnson*, 885 N.E.2d at 31 (emotional distress action accrues at time of injury); *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) (Section 1983 claims accrue when constitutional injury occurs).

According to plaintiff's own allegations, he experienced the injury underlying all of the aforementioned claims by 2019. It was either during or before that year that nearly every event occurred related to the alleged conspiracy, including but not limited to: Helen's signing of documents, facilitated by Ricky and Ralph (*e.g.*, DE # 3 at 4-5); Lowe and Cooper's IAPS investigation report and communications related to it (*e.g., id.* at 8, 9, 11-12); Iron-Joste's representation of plaintiff, communications with alleged co-conspirators, and communications with plaintiff (*e.g., id.* at 8, 10); Coleman's representation of Ricky and communications with co-conspirators (*e.g., id.* at 4-6, 7-9, 11); and Dr. Sinha's visits to Helen, his reports regarding those visits, and his communications with alleged co-conspirators (*e.g., id.* at 7-10). These actions allegedly caused plaintiff to be deprived of his rights. (*Id.* at 1.) Plaintiff's own allegations further indicate that plaintiff was well-aware of this deprivation in 2019. Indeed, plaintiff was a party to the guardianship proceedings, and plaintiff alleges that Irons-Joste herself disclosed fraudulent reports that revealed the conspiracy to plaintiff on July 26, 2019. (*Id.* at 9.) Thus, plaintiff's own complaint establishes that these claims accrued in 2019.

7

Plaintiff had two years to file suit, but he did not do so until 2024. His claims are, therefore, untimely.

Plaintiff argues that several legal doctrines should save his untimely claims from dismissal. The first of these is the continuing violation doctrine, also referred to as the "continuing wrong," "continuing harm," or "continuing tort" doctrines. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). The doctrine of continuing violation is not a tolling doctrine; rather, the principle is applied to shift the date of accrual. *Id.* at 319. The determination of the date of accrual is governed by federal law, so the court applies federal jurisprudence in determining whether the doctrine applies in this case. *Kelly*, 4 F.3d at 511.

The continuing violation doctrine allows a plaintiff to reach back to include the facts in the beginning, even if that beginning lies outside the statutory limitations period. *Heard*, 253 F.3d at 319. The Seventh Circuit has observed that the continuing violation doctrine is often misapplied. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). Typically, the continuing violation doctrine alters the date of accrual only when where a series of wrongful acts "blossom[] into an injury" for which recourse could not have been previously sought. *Id.* For this reason, the Seventh Circuit commented, the doctrine should actually be named the "cumulative" violation doctrine. *Id.*; *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) ("It is thus a doctrine not about a continuing, but about a cumulative, violation."). For example, duration is often necessary to convert what is merely offensive workplace behavior into

8

an actionable alteration in the plaintiff's working conditions. *Jones v. Merchants National Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir. 1994).

By contrast, the doctrine does not apply when a defendant commits numerous transgressions, but each act is wrongful independent of other events. *Ghelf v. Town of Wheatland,* 132 F.4th 456, 469–70 (7th Cir. 2025). In *Ghelf,* the plaintiffs alleged acts that were each independently wrongful, such as the failures to render emergency services, the filings of baseless complaints, and the execution of unlawful arrests. *Id.* The Seventh Circuit held that the plaintiffs were required to bring their claims arising from these discrete acts within the limitations period applicable to each alleged act. *Id.* Having failed to do so, their claims arising from acts committed before the statutory limitations period were untimely. *Id.*

This case is like *Ghelf,* involving multiple alleged transgressions, each independently wrongful. Defendants' alleged wrongs did not "blossom" into a claim at some later time. *Limestone,* 520 F.3d at 801. It is also worth noting that the latest alleged wrongdoing appears to be the testimony of Lowe on November 6, 2020, during an unnamed proceeding. (DE # 3 at 9.) But this, too, occurred more than two years before the filing of the complaint in 2024. Put another way, even if the continuing violation doctrine applied to plaintiff's claims, it would not save them.

Plaintiff also argues that the discovery rule should be applied to toll the statute of limitations in his case. Courts are to apply state law tolling rules. *Hardin v. Straub,* 490 U.S. 536, 543 (1989). Indiana's discovery rule "is based on the reasoning that it is

9

inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists." *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 86 (Ind. 1985). In this case, plaintiff's own allegations demonstrate that he was aware of the alleged harm to himself in 2019. Thus, plaintiff cannot rely on the discovery rule to toll the statute of limitations.

Even if plaintiff did not know the full scope of the alleged conspiracy at the time, or every detail forming the claim, tolling does not apply under the discovery rule. As the Indiana Court of Appeals has explained, "[t]he discovery rule is not intended to toll the limitation period until optimal litigation conditions can be established. Rather, as we stated previously, the purpose of the discovery rule is to limit the injustice that would arise by requiring a plaintiff to bring his or her claim within the limitation period during which, even with due diligence, he or she could not be aware a cause of action exists." *Rieth-Riley Const. Co. v. Gibson*, 923 N.E.2d 472, 476–77 (Ind. Ct. App. 2010). Again, because plaintiff's allegations establish that he was aware of his alleged injuries in 2019, but he did not file suit until 2024, the discovery rule will not operate to toll the statute limitations to save his claims from dismissal.

Plaintiff further argues that the doctrine of fraudulent concealment tolls the statute of limitations. This principle means "the statute in good conscience cannot run until the party has a right to commence his suit, and that right can not accrue in the case of fraud, until the injured party is informed of the injury done or fraud committed."

*Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1261 (Ind. 2014). "The law narrowly defines concealment, and generally the concealment must be active and intentional." *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1072 (Ind. Ct. App. 2003). Plaintiff alleges that Irons-Joste did the opposite of actively concealing the conspiracy from plaintiff; plaintiff alleges that she disclosed the scheme to him by emailing him fraudulent documents in July of 2019. (DE # 3 at 9.) Further, plaintiff's own pleadings make it clear that, even if defendants did attempt to conceal the scheme from plaintiff, it was ineffective. Plaintiff's allegations demonstrate that he was aware of at least some of the misrepresentations that allegedly occurred in 2019 during Helen's guardianship proceedings, to which he was undisputedly a party. For these reasons, the doctrine of fraudulent concealment does not apply in this case.

Lastly, plaintiff attempts to employ the principle of equitable tolling to prevent dismissal of his untimely claims. Under Indiana law, principles of equity may preclude a party from invoking the statute of limitations when that party, by fraud or other misconduct, has prevented the filing of a lawsuit or induced its delay beyond the time permitted by statute. *Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1224 (Ind. 2021). However, the court will not apply this principle in this case for reasons now repeated numerous times in this opinion: by plaintiff's own allegations, he was aware of his alleged injury in 2019. No satisfactory reasoning has been – or could be – provided regarding why plaintiff failed to file suit within the limitations period applicable to his claims. Thus, equitable tolling will not apply.

11

In sum, plaintiff's claims alleging defamation, legal malpractice, breach of fiduciary duty, intentional infliction of emotional distress, and violations of Section 1983 are each subject to a two-year statute of limitations. These claims accrued by 2019. Because suit was not filed until 2024, these claims are time-barred, and no legal or equitable principles apply to alter this result. Untimeliness is an affirmative defense, but dismissal at the pleading stage is permissible when it is clear from the face of the complaint that the claims are untimely. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is satisfied here, so these claims will be dismissed.

### B. Plaintiff's RICO Claim

Plaintiff's civil RICO claim is subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Plaintiff filed this lawsuit on July 29, 2024. (DE # 1.) Thus, his RICO claim is limited to allegations occurring between July 29, 2020, and July 29, 2024. The court can only discern one plausible allegation that might support a RICO claim occurring within this window of time: plaintiff's allegation that defendant Lowe, an IAPS investigator, testified under oath on November 6, 2020, in a manner that harmed plaintiff. (DE # 3 at 9.)

The substance of Lowe's testimony is unclear, and plaintiff does not specify where or in what context the testimony was given. This alone gives the court reason to dismiss the claim as inadequately pleaded under Rule 9(b). However, more substantially, the allegations also fail to state a claim under Rule 12(b)(6). A critical

element of a civil RICO claim is the establishment of a pattern of activity. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir. 1986) (a pattern of racketeering activity requires "at least two acts of racketeering activity"). In this case, no pattern of racketeering can be extrapolated from the allegations that occurred during the four-year time period prior to the filing of the complaint. To explain, the court must revisit the concept of accrual.

A civil RICO claim accrues when the plaintiff discovers his injury, even if plaintiff has not yet discovered the pattern of racketeering. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992). In this case, plaintiff's RICO claim accrued in 2019 when Lowe and the other defendants allegedly interfered with plaintiff's guardianship rights, and through other allegedly wrongful acts that occurred around the same time. The time of accrual for plaintiff's claim is unchanged even though plaintiff claimed he later discovered *more* acts contributing to the alleged pattern of racketeering, such as Lowe's testimony on November 6, 2020. *Id.*; *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386–87 (7th Cir. 2010) (it is "the injury arising from the first predicate act to injure the plaintiff . . . [that] starts the limitations period running, rather than the injury from the last predicate act, which might occur decades after the first").

Plaintiff argues that the "continuing violation" doctrine should be applied to allow the November 6, 2020, allegation regarding Lowe's testimony to breathe life into the untimely allegations of 2019. *See Heard*, 253 F.3d at 319 (the continuing violation doctrine allows a plaintiff to reach back to include the facts in the beginning, even if that

13

beginning lies outside the statutory limitations period). As explained above, the continuing violation doctrine alters the date of accrual only when where a series of wrongful acts "blossom[] into an injury" for which recourse could not have been previously sought. *Limestone*, 520 F.3d at 801.

In *Limestone*, the Seventh Circuit addressed the continuing violation doctrine in the context of civil RICO cases. The court explained that a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Limestone*, 520 F.3d at 802. As the *Limestone* court further explained, "[a] pattern of trying to force out Limestone without having to pay the fair market value of its property was well established years before the 2003 predicate acts. If Limestone wanted to include the old acts in its RICO suit, it had to sue by 2004." *Id.* The same logic applies in this case. Plaintiff's allegations regarding a pattern of attempts to deprive plaintiff of his rights was well established in 2019. If he wanted to include these old acts in a RICO suit, he had to sue by 2023. He did not. He sued on July 29, 2024. As a result, his RICO suit is limited to allegations occurring within the four years preceding the date he filed his lawsuit (*i.e.*, between July 29, 2020, and July 29, 2024).

To the extent that plaintiff relies upon the principles of the discovery rule, fraudulent concealment, or equitable tolling to alter the time period within which the court will deem his allegations timely-filed, the court's previous discussion of those doctrines applies equally here to plaintiff's RICO claim, and the analysis need not be

14

repeated. It is sufficient to summarize that plaintiff's own allegations contradict any argument that he did not or could not have discovered his injuries, that the defendants concealed his injuries from him, or that fraud or misconduct was employed to hide the injuries that triggered accrual of his RICO claim.

The practical reality of limiting plaintiff's RICO claim to the allegations occurring within the four years preceding the filing of the complaint is that those allegations fail to state a civil RICO claim. For example, if plaintiff cannot point to the events of 2019 in support of his RICO claim, he has no chance of demonstrating a pattern of racketeering, a necessary element of the claim. *See United States v. Watkins*, 107 F.4th 607, 626 (7th Cir. 2024). Lowe's false testimony on November 6, 2020, is not enough. *Morgan*, 804 F.2d at 974. Nor can plaintiff establish sufficient "conduct" on the parts of defendants; a RICO claim is stated only when a defendant is alleged to have played "some part in directing the enterprise's affairs" beyond mere participation. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). No plausible allegations are made that Lowe (or any other defendant, for that matter) directed the enterprise's affairs within the four years prior to the complaint's filing. Put simply, the timely-filed allegations in plaintiff's complaint do not state a civil RICO claim.

### C. Plaintiff's Fraud Claim

Plaintiff also attempts to state a claim for common law fraud claim under Indiana law against Ricky Goldman, Caldwell, Coleman, Irons-Joste, and Dr. Sinha. (DE # 3 at 18.) Common law fraud has a six-year period of limitations under Indiana law.

15

*Spainhower v. Smart & Kessler, LLC,* 176 N.E.3d 258, 263 (Ind. Ct. App. 2021). Therefore, the statute of limitations does not bar the claim.

However, the claim is still meritless. A claim for fraud under Indiana law consists of the following elements: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage of which the plaintiff complains. *BSA Const. LLC v. Johnson,* 54 N.E.3d 1026, 1031 (Ind. Ct. App. 2016). Though plaintiff's fraud allegations are insufficient with respect to many of these elements, it is sufficient to point out that his allegations are inconsistent with the fifth element of this claim: reliance. Specifically, plaintiff fails to allege that *he* relied upon any misrepresentations allegedly made by Ricky, Caldwell, Coleman, Irons-Joste, or Dr. Sinha, to his detriment. Indeed, the entire focus of plaintiff's complaint is that misrepresentations were made to and relied upon by *others* – for example, the court overseeing the guardianship dispute. Because plaintiff does not – and cannot – plausibly allege that he relied upon the alleged misrepresentations of defendants to his detriment, his fraud claim fails.

### D.     Leave to Amend

As explained above, plaintiff's allegations fail to state any claims for relief and defendants' motions to dismiss will be granted. However, a district court should generally permit leave to amend after granting a motion to dismiss, except in the rare

16

instance when an amendment would be futile or otherwise unwarranted. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). In this case, no amendments to plaintiff's allegations, consistent with his current complaint, can correct the deficiencies outlined above with respect to plaintiff's claims for defamation, legal malpractice, breach of fiduciary duty, intentional infliction of emotional distress, violations of Section 1983, and fraud. Accordingly, these claims are now dismissed without leave to replead. Even if a particular defendant did not move to dismiss on the specific grounds employed by the court in this opinion, or did not file a motion to dismiss at all, the claims against those defendants are still dismissed. *Rosser v. Chrysler Corp.*, 864 F.2d 1299 (7th Cir. 1988); *Huang v. Shiu*, 124 F.R.D. 175, 178 (N.D. Ill. 1988) (district court may *sua sponte* dismiss action as to non-moving defendants who are in a position similar to that of moving defendants).

Regarding plaintiff's civil RICO claim, the court can conceive of potential amendments to the pleadings which might cure the deficiencies described in this opinion. Of course, an amended RICO claim may present other deficiencies which warrant its dismissal. For now, though, the court affords plaintiff an opportunity to file an amended complaint consistent with his prior allegations but limited to his civil RICO claim *only*. Consistent with this opinion, the court will not consider allegations outside of the limitations period applicable to plaintiff's RICO claim (July 29, 2020 through July 29, 2024). Allegations failing to comply with Rule 9(b) will be disregarded. *Appvion*, 99 F.4th at 945. The court will not allow further amendments to the complaint. *See Agnew v.*

17

*Nat'l Collegiate Athletic Ass'n,* 683 F.3d 328, 347 (7th Cir. 2012) (district court is not required to grant leave to amend when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted).

### E. Miscellaneous Matters

Plaintiff previously moved for Clerk's entry of default against Ricky and Ralph Goldman. (DE # 41.) Ricky and Ralph Goldman filed an answer to the amended complaint on November 19, 2024. (DE # 44.) The Clerk has not entered default. Even if the Clerk had done so, a Clerk's entry of default is not a default judgment; it is simply the first step of a two-step process by which a plaintiff may obtain judgment by default. *See Conn. Nat'l Mortgage Co. v. Brandstatter,* 897 F.2d 883, 885 (7th Cir. 1990). In any event, Ricky and Ralph Goldman have since appeared in the case, so even if the Clerk had entered default, the court would have set it aside *sua sponte* so the merits of this case could be addressed. *Judson Atkinson Candies, Inc. v. Latini- Hohberger Dhimantec,* 529 F.3d 371, 386 (7th Cir. 2008).

Plaintiff has also moved for sanctions against Ralph and Ricky Goldman's attorney for filing a certificate of service that informed the court that plaintiff was notified of certain filings via email, when in fact the filings were only sent to plaintiff via U.S. Certified Mail. (DE # 82.) There is no dispute that plaintiff received notice of the filings and had a sufficient opportunity to respond. An attorney's error in drafting a certificate of service is not worthy of sanctions. *Cf. Knopp v. Wells Fargo Bank, N.A.,* 725

F. App'x 414, 415 (7th Cir. 2018) (sanctions need not be imposed for mistakes, such as a delay in mailing a paper copy of a brief). The motion is denied.

## IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS** the defendants' motions to dismiss. (DE ## 26, 28, 33, 35, 37, 39.) Plaintiff is **GRANTED** leave to file an amended complaint containing allegations related to his civil RICO claim, *only*, by **October 30, 2025**. Because all claims against defendants Ralph Goldman and Indiana Adult Protective Services have been dismissed, the Clerk is **DIRECTED** to terminate their statuses as defendants in this case.

Plaintiff's motion for Clerk's entry of default is **DENIED.** (DE # 41.) Defendants' motions to strike are **DENIED.** (DE ## 54, 63, 64, 74.) Plaintiff's motion for acceptance of late-filed response is **GRANTED.** (DE # 70.) Plaintiff's motion for sanctions is **DENIED.** (DE # 82.)

**SO ORDERED.**

Date: September 30, 2025

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT